**FILED UNDER SEAL**

PLAINTIFFS UNDER SEAL,

)

)   CIVIL ACTION NO. <u>8:12-CV-1812-T-35EAJ</u>

)

V.                                    )   <u>FILED UNDER SEAL</u>

)

)   <u>JURY TRIAL DEMANDED</u>

DEFENDANT UNDER SEAL.                 )

)

──────────────────────────  )

## <u>PLAINTIFF'S  SECOND AMENDED COMPLAINT</u>

By: _____

**DAVID J. LINESCH, ESQ.**
Florida Bar No. 0376078
*The Linesch Firm, P.A.*
700 Bee Pond Road
Palm Harbor, FL  34683
Voice: (727) 786-0000
Facsimile: (727) 786-0974
Email: laborlaw@lineschfirm.com
Attorney for Plaintiff/Relator



Dated: November 27, 2012



1

 

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| *ex rel.* Bryan Rose and ) | |
| Bryan Rose Individually, ) | CIVIL ACTION NO. 8:12-CV-1812-T-35EAJ |
| ) | |
| ) | |
| STATE OF FLORIDA, ex rel. ) | |
| Bryan Rose; ) | |
| STATE OF CALIFORNIA, ex rel. ) | |
| Bryan Rose; ) | |
| STATE OF ILLINOIS, ex rel. ) | FILED UNDER SEAL |
| Bryan Rose; ) | PLAINTIFF'S SECOND AMENDED |
| STATE OF TENNESSEE, ex rel. ) | COMPLAINT PURSUANT TO |
| Bryan Rose; ) | 31 U.S.C. § 3729(a)(1)(A)(B)(C) |
| STATE OF TEXAS, ex rel. ) | FEDERAL FALSE CLAIMS ACT |
| Bryan Rose; ) | AND VARIOUS STATE FALSE |
| COMMONWEALTH OF ) | CLAIMS ACTS, AND PENDENT |
| MASSACHUSETTS, ex rel. ) | STATE CLAIMS |
| Bryan Rose; ) | |
| STATE OF DELAWARE, ex rel. ) | |
| Bryan Rose; ) | |
| STATE OF NEVADA, ex rel. ) | |
| Bryan Rose; ) | JURY TRIAL DEMANDED |
| STATE OF LOUISIANA, ex rel. ) | |
| Bryan Rose; ) | |
| STATE OF HAWAII, ex rel. ) | |
| Bryan Rose; ) | |
| DISTRICT OF COLUMBIA, ex rel. ) | |
| Bryan Rose; ) | |
| COMMONWEALTH OF ) | |
| VIRGINIA, ex rel. ) | |
| Bryan Rose; ) | |
| STATE OF GEORGIA, ex rel. ) | |
| Bryan Rose; ) | |
| STATE OF INDIANA, ex rel. ) | |
| Bryan Rose; ) | |
| STATE OF MICHIGAN, ex rel. ) | |

Bryan Rose;                                          )
STATE OF MONTANA, ex rel.                            )
Bryan Rose;                                          )
STATE OF NEW JERSEY, ex rel.                         )
Bryan Rose;                                          )
STATE OF NEW MEXICO, ex rel.                         )
Bryan Rose;                                          )
STATE OF NEW YORK, ex rel.                           )
Bryan Rose;                                          )
STATE OF OKLAHOMA, ex rel.                           )
Bryan Rose;                                          )
STATE OF RHODE ISLAND, ex rel.                       )
Bryan Rose;                                          )
STATE OF WISCONSIN, ex rel.                          )
Bryan Rose;                                          )
                                                     )
                    **Plaintiffs,**                  )
                                                     )
v.                                                   )
                                                     )
INTUITIVE SURGICAL, INC.                             )
                                                     )
                    **Defendant.**                   )
_____)

## PLAINTIFF'S SECOND AMENDED COMPLAINT



# TABLE OF CONTENTS

I.      Introduction.................................................................................................................6

II.     Parties......................................................................................................................7

III.    Jurisdiction and Venue..............................................................................................8

IV.     Statutory and Regulatory Background.......................................................................8

V.      Preliminary Statement..............................................................................................10

VI.     Causes of Action.....................................................................................................16

         Count I – False Claims (31 U.S.C. § 3729(a)(1)(A)(B)(C))..............................16
         Count II – False Claim Act Retaliation (31 U.S.C. § 3730(h))..........................18
         Count III - Florida Whistleblower Retaliation Claim (Fla. Stat. 448.101 *et. al.*)........18

VII.    Prayer of Relief.......................................................................................................19

VIII.   States Causes of Action...........................................................................................20

A.      Count IV – California False Claims Act..................................................................20

B.      Count V – Florida False Claims Act.......................................................................23

C.      Count VI – Massachusetts Claims Act...................................................................24

D.      Count VII – Tennessee Medicaid False Claims Act................................................27

E.      Count VIII – Delaware False Claims and Reporting Act........................................30

F.      Count IX– Nevada False Claims Act.....................................................................32

G.      Count X – Louisiana Medical Assistant Programs Integrity Law............................34

H.      Count XI – Hawaii False Claims Act.....................................................................37

I.      Count XII – District of Columbia Procurement Reform Amendment.......................39

J.      Count XIII – Virginia Fraud Against Taxpayers Act.............................................41



K.       Count XIV – Georgia State False Medicaid Claims Act.....................................44

L.       Count XV – Indiana False Claims and Whistleblower Protection Act....................46

M.      Count XVI – Michigan Medicaid False Claims Act............................................49

N.       Count XVII – Montana False Claims Act...........................................................51

O.       Count XVIII – New Jersey False Claims Act.......................................................53

P.       Count XIX –New Mexico Medicaid False Claims Act.........................................56

Q.       Count XX – New York False Claims Act.............................................................58

R.       Count XXI – Oklahoma Medicaid False Claims Act............................................60

S.       Count XXII – Rhode Island State False Claims Act.............................................62

T.       Count XXIII – Texas False Claims Act...............................................................64

U.       Count XXIV– Wisconsin False Claims Act.........................................................67

V.       Count XXV - Illinois Whistleblower Reward and Protection Act..............................69

W.      Count XXVI – Common Fund Relief.................................................................71

IX.     Demand For Jury Trial....................................................................................73



## PLAINTIFF'S SECOND AMENDED COMPLAINT

1.      The United States of America, the States of Florida, California, Delaware, Georgia, Hawaii, Illinois, Indiana, Louisiana, Michigan, Montana, Nevada, New Jersey, New Mexico, New York, Oklahoma, Rhode Island, Tennessee, Texas, Wisconsin, the Commonwealths of Massachusetts and Virginia, and the District of Columbia, by and through *qui tam* Relator, **Bryan Rose**, brings this action under 31 U.S.C. § 3729(a)(1)(A)(B)(C) ("False Claims Act") to recover all damages, penalties and other remedies established by the *False Claims Act* (FCA) on behalf of the United States and themselves, and would show the following:

### I. INTRODUCTION:

2.      Florida's Medicaid is the State and Federal partnership that provides health coverage for selected categories of people with low incomes. Its purpose is to improve the health of people who might otherwise go without medical care for themselves and their children. Medicaid funds are stretched to their limit and any abuse further stresses these important funds.

3.      Florida's Medicare is a crucial safety net for individuals who are at least sixty-five (65) years old or have a permanent disability. The Medicare program costs are paid by United States citizens under the *Federal Insurance Contributions Act* (FICA). The money from FICA pays for the doctors and hospitals that Medicare recipients use. Overall, the program accounts for approximately thirteen percent (13%) of the federal budget, with an estimated annual cost of two hundred and seventy-seven billion dollars ($277,000,000,000).

4.      Medicaid and Medicare have been subject to fraud and abuse by unscrupulous providers who have put profits above the public good. Those fraudulent schemes have threatened to diminish the quality of care, burdened taxpayers, and degrade the medical profession. The Relator alleges the extensive fraudulent scheme in the robotic surgical industry has been carried out over a period of

years by **Intuitive Surgical, Inc.**, the only manufacturer and provider of robotic-assisted minimally invasive surgical equipment in the United States.

5.     This suit concerns fraud perpetrated against the United States Government through false and fraudulent inducements and kickback schemes to physicians, in order to procure Medicare and Medicaid paid business from them.  As a result of this nationwide scheme, **Intuitive Surgical, Inc.**, reaped profits far beyond those it would have achieved from legitimate promotion of its business. This scheme was perpetrated by **Intuitive Surgical, Inc.** directing physicians and practice groups to complete an additional number of daVinci® robotic surgeries in order to acquire gratuitous training on the daVinci® Surgical System and surgical techniques, as well as complimentary travel arrangements.  This conduct fraudulently induced physicians to schedule and perform surgical cases (or surgeries), including work paid for, and through Medicare and Medicaid.

6.     **Intuitive Surgical, Inc.** engaged in price-fixing/market manipulation by alternatively offering/threatening exclusive product sales/placements between hospitals in order to compel sales of **Intuitive Surgical, Inc.** products and thereby ultimately and unlawfully reducing market competition in violation of the Sherman Act 15 U.S.C. §§ 1-7.

7.     Further, **Intuitive Surgical Inc.** engaged in other fraudulent schemes as detailed below, in order to compel hospitals and physicians to purchase and utilize the daVinci® Surgical System. Additionally, **Intuitive Surgical, Inc.** directs physicians how to code, and bill for, certain procedures in order to procure authorization for surgeries using the daVinci® Surgical System, thus fraudulently gaining increased revenue from cases paid for through Medicare and Medicaid.

## II. PARTIES:

8.     **Bryan Rose** ("Rose" or "Relator") is a citizen of the United States of America and resident of the State of Florida.  Relator, **Rose**, brings this civil action for violations of 31 U.S.C. §



3729(a)(1)(A)(B)(C), for himself and for the United States Government pursuant to 31 U.S.C. §
3730(b)(1).

9.      Defendant, **Intuitive Surgical, Inc.** ("ISI" or "Defendant"), is a national corporation with
its principal place of business in Sunnyvale, California, and international offices in Switzerland and
China.  **Intuitive Surgical, Inc.** conducts extensive business in the States of Florida, California,
Delaware, Georgia, Hawaii, Illinois, Indiana, Louisiana, Michigan, Montana, Nevada, New Jersey,
New Mexico, New York, Oklahoma, Rhode Island, Tennessee, Texas, and Wisconsin, the
Commonwealths of Massachusetts and Virginia, and the District of Columbia.   Clinical Sales
Representatives (CSRs) work out of their home and report to their supervisors in their respective
States.

### III. JURISDICTION AND VENUE:

10.      This action arises under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)(B)(C).

11.      Jurisdiction over this action is conferred on this Court by 31 U.S.C. 3732(a) and 28 U.S.C.
1331 in that this action arises under the laws of the United States of America.

12.      Venue is proper in the United States District Court for the Middle District of Florida,
Tampa Division, pursuant to 28 U.S.C. § 1391(b) and (c), and 31 U.S.C. § 3732(a) because the
Defendant transacts business in this District and the facts forming the basis for the Complaint
occurred in this District.

### IV. STATUTORY AND REGULATORY BACKGROUND:

13.      The Medicare and Medicaid Anti-Fraud and Abuse Amendments, known as the Medicare
Anti-Kickback Statute ("Anti-Kickback Statute"), 42 U.S.C. § 1320a-7b(b), make it illegal for an
individual knowingly and willfully to offer or pay remuneration in cash or in kind to induce a
physician to order a good or service that is reimbursed by a federal healthcare program.  *See* 42
U.S.C. § 1320a-7b(b)(2).

8



14.    The purpose of the Anti-Kickback Statute is to prohibit such remuneration in order to secure proper medical treatment and referrals, and to limit unnecessary treatment, services, or goods that are based not on the needs of the patient, but on improper incentives given to others, thereby limiting the patient's right to choose proper medical care and services. *See* Medicare and Medicaid Programs; Fraud and Abuse OIG Anti-Kickback Provisions, 54 Fed. Reg. 3088, 3089 (proposed January 23, 1989) (to be codified 42 C.F.R. pt. 1001).

15.    Paying kickbacks taints an entire prescription or sale of medical equipment/service, regardless of the medical propriety of its use. The kickback inherently interferes with the doctor-patient relationship and creates a conflict of interest, potentially putting the patient's health at risk. Any defendant convicted under the statute is automatically barred from participating in federal and federally-funded healthcare programs.

16.    Section 1 of the Sherman Act (15 U.S.C.§ 1) prohibits any agreement among competitors that unreasonably limits competition. Section 1 reads: "Every contract, combination... or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal..." Price fixing, bid rigging, and market allocation are violations of Section 1 and generally are prosecuted criminal. Criminal enforcement of the Sherman Act is the responsibility of the Antitrust Division of the United States Department of Justice. *See* Sherman Act 15 U.S.C. §§ 1-7.

17.    Price fixing, bid rigging, and market allocation are generally prosecuted criminally because they have been found to be unambiguously harmful, that is, per se illegal. Such agreements have been shown to defraud consumers and unquestionably raise prices or restrict output without creating any plausible offsetting benefit to consumers unlike other business conduct that may be the subject of civil lawsuits by the federal government. Criminal prosecution under Section 1 of the Sherman Act (15 U.S.C.§ 1) requires only the existence of concerted action in restraint of trade -



specifically, an agreement among competitors to fix prices, rig bids, or allocate markets. The agreement must be between two or more independent business entities or individuals.

## V. PRELIMINARY STATEMENT:

18.    Relator, **Bryan Rose**, was an employee of **Intuitive Surgical, Inc.**, and most recently held the position of Clinical Sales Representative ("CSR"). Relator, **Rose**, was employed with **Intuitive Surgical Inc.**, from approximately May, 2011, until his termination on August 15, 2012.

19.    Relator, **Rose**, has first-hand knowledge of the fraudulent scheme conducted by **ISI** through kickbacks/remunerations being paid directly in exchange for referrals and surgical procedures. Relator, **Rose**, has first-hand knowledge of the illicit activities executed by **ISI** through coding and billing for procedures utilizing **ISI** products. Relator, **Rose**, has first-hand knowledge of "off-label" usage of **ISI** products. Relator, **Rose** has first-hand knowledge and documentation of the fraudulent activities by **ISI**.

20.    Defendant, **ISI**, is the manufacturer and seller of the daVinci® Surgical System, which is a patented, one of a kind, robotic-assisted minimally invasive surgery technology. It combines 3D high definition vision with patented EndoWrist® Instruments to allow surgeons to perform surgical procedures utilizing small incisions, instead of traditional surgical methods. According to **ISI's** website, www.intuitivesurgical.com, "Many standard laparoscopic procedures may be performed more quickly and easily using the *daVinci* Surgical System. This is because the *daVinci* System delivers equal or improved outcomes while maintaining the same 'look and feel' of open surgery." Since the creation of the daVinci® Surgical System, **Intuitive Surgical, Inc.** has advertised on their website, that this robot has already been sold to over "1,785 hospitals worldwide," and "more than 2,226 Systems are [currently] installed." Currently, **ISI** is the only manufacturer and the sole sales agent of robotic-assisted minimally invasive surgery technology and training, which has led to a worldwide monopolization within the industry.

21.    Defendant receives payment from hospitals for the initial purchase of the daVinci® Surgical System. ISI also receives payment for additional instruments purchased, upgrades to the system, as well as separate payment for every time the daVinci® Surgical System® instrumentation is utilized in any surgery.

22.    Defendant utilizes the language "agitation" and "leverage" within the corporate culture to describe the unlawful inducement that directs their Clinical Sales Representatives to engage in, to promote, to achieve sales and increase revenue for **ISI**.

23.    After a physician or a hospital engages in the purchase of the daVinci® Surgical System, ISI requires a numerous amount of training. However, in order for physicians or hospital staff to become initially introduced and trained on the machine, ISI holds to a strict requirement that at least three (3) surgeries must be scheduled utilizing the daVinci® Surgical System, prior to the commencement of any type of training. Further, **Intuitive Surgical, Inc.** demands all participating physicians and hospital staff to undergo extensive and continuous training in order to remain authorized to use the technology. ISI conditions the trainings on the physician scheduling surgeries utilizing the daVinci® system, before the training is approved, this is exemplified within **ISI's** Clinical Pathway Documents ("CPD"). CSR's are required by Defendant to train at least three (3) physicians each quarter (90 days) in the daVinci® Surgical System; of these three (3) physicians, two (2) must be Gynecologists.

24.    This fraudulent scheme has interfered with the doctor-patient relationship, as it creates a conflict of interest, potentially putting the patient's health at great risk, since the physician does not truly understand the usage of the robotics when scheduling the surgeries, nor allows the doctor to properly explain the benefits or possible detriments to the patient. The **Intuitive Surgical, Inc.** website states; "Surgery with the *daVinci* Surgical System may not be appropriate for every individual; it may not be applicable to your condition. Always ask your doctor about all treatment



options, as well as their risks and benefits. Only your doctor can determine whether *daVinci* Surgery is appropriate for your situation." Relator, **Rose**, has expressed at various times, his concern for the general public when **ISI** requires physicians to direct their patients to a surgical procedure with a technology they have not yet been trained to utilize, or become fully proficient with.

25.    **Intuitive Surgical, Inc.'s** requirement of a minimum of three (3) scheduled procedures by physicians prior to official training on the daVinci® Surgical System results in profits for **ISI,** before a physician is even qualified in the technology. **This constitutes an unlawful inducement.** Subsequently, this has led to fraudulent billing to Medicare and Medicaid, as the physician has not been properly trained or is able to assess whether utilization of the daVinci® Surgical System is a necessary procedure that Medicare or Medicaid should reimburse.

26.    This fraudulent scheme can ultimately lead to patient harm where the physician has not been properly trained to utilize the **ISI** equipment, or he/she is not able to make a reasonable determination regarding each patient's specific health risks, and possible dangers of using the daVinci® Surgical System.

27.    Defendant engages in a kickback scheme by training their Clinical Sales Representatives to require physicians to have additional training with the daVinci® Surgical System. **ISI** provides training sessions to those physicians who utilize the daVinci® Surgical System for a required number of surgeries, consequently leading to numerous surgeries scheduled by physicians in order to receive additional training. Relator has been directed by **ISI** to provide physicians with corporate paid trips and trainings, as long as they schedule surgeries using this technology. Many physicians reap these benefits with a minimum of three (3) surgeries utilizing the daVinci® Surgical System.

28.    Defendant 'leverages' physicians nationwide with promotional benefits in exchange for surgeries completed. **ISI** promotes physicians on its "Surgeon List" on the company website as long as a physician initially completes twenty (20) surgeries utilizing the daVinci® Surgical System. In



order to maintain this promotional benefit, the physician must complete a minimum of twenty (20) surgeries utilizing the daVinci® Surgical System each year. **This constitutes an unlawful inducement.**

29.     Defendant is presently selling a new "Single Site" surgical system; which is an instrumentation add on to the daVinci® Surgical System for transumbilical entry (one incision through the belly button) and currently approved for cholecystectomy, or removal of the gallbladder. This Single Site surgical system has not been approved by the Federal Food and Drug Administration (FDA) when used in a gynecological procedure such as a hysterectomy, which is one of the most common surgeries performed by the daVinci® Surgical System.

30.     Additionally, **ISI** has record of off-label procedures being performed utilizing the single site daVinci® Surgical System for gynecological procedures which it is not currently approved for. When a surgery is performed with the daVinci® Surgical System, the robot itself maintains a record of what instruments were utilized and when, as well as the name of the Doctor who logged in to perform the surgery. This information is sent to **ISI** when the robot is connected to the internet, and then logged into **ISI**'s NetSuite data system. Weekly reports regarding this information are also completed by Clinical Sales Representatives and logged into NetSuite.

31.     Relator, Rose, has knowledge of utilization of **ISI** equipment for gynecological procedures, currently not approved by the FDA, with the Single Site daVinci® Surgical System. Defendant, **ISI**, by and through its officers, agents and employees, knowingly by and through its sales representatives, presented or caused to be presented to physicians off-label and non-FDA approved utilization of **ISI** products.

32.     **ISI** requires that after the purchase of the Single Site surgical system, surgeons must complete ten (10) surgeries with the daVinci® Surgical System without the Single Site incision add on, before a CSR is permitted to schedule a physician for initial introduction and training on the



usage of the newly purchased Single Site surgical system. This unlawful inducement is orchestrated in order to secure medical treatments, and referrals that are based, not on the needs of the patient, but on unlawful incentives given to physicians, thereby subordinating the physician's obligation to prescribe the appropriate surgical treatment and the patient's right to choose proper medical care and services. This unlawful inducement has directly lead to fraudulent billings within Medicare and Medicaid.

33.    **Intuitive Surgical, Inc.** directs CSR's to require physicians to schedule surgeries using the daVinci® Surgical System to qualify for additional training and marketing support for the Single Site technology, which will promote the physician as one of the first qualified in the new Single Site technology for gynecological procedures. Further, once a physician is trained, ISI receives revenue from every procedure the physician will ever perform with the daVinci® Surgical System, as there is a charge for every instrument utilized within every surgery as well as draping the device. This unlawful inducement has directly lead to fraudulent billings within Medicare and Medicaid.

34.    Defendant directs their Clinical Sales Representatives to 'leverage' physicians by fraudulently planning "Market Development Events" with no intention of ISI ever holding these events. This fraudulent sales practice is used to fool hospitals that do not own ISI products, and physicians who are not trained with ISI products, into believing that they are missing a significant surgical income source to their competitors, who utilize the daVinci® Surgical System.

35.    Defendant directs their Clinical Sales Representatives to 'agitate' physicians into resigning from staff at one hospital, in order to transfer to the staff of another hospital that owns and utilizes the daVinci® Surgical System. Further, they induce the physician into transferring, by offering additional training sessions with paid expenses in the daVinci® Surgical System. Defendant openly directs the 'agitation' of competing surgeons and hospitals by its advertisement of training seminars within a marketplace. Defendant directs their CSR's to 'leverage' hospitals with the promise of



recruiting physicians, who are trained in ISI technology, to join their staff and generate additional income, as long as the hospital purchases a unit or upgrades their current system.

36.    Defendant, ISI, encourages Clinical Sales Representatives to sell more robotics by presenting "success stories that everyone should be copying." The "success story" refers to a training method for CSR's to 'leverage' physicians by instructing them how to fraudulently code, and bill, Medicare and Medicaid for tests and procedures using ISI products. The robotics tests and procedures are clinically unnecessary, much more expensive and could be performed with traditional methods.

37.    Defendant, ISI, instructs Clinical Sales Representatives to "address robotic profitability for the hospital" by teaching physicians how to code their procedures in a specifically directed fashion, so they can utilize the daVinci® Surgical System. However, this leads to having the procedure coded as a more expensive procedure for the patient, the insurance company, as well as Medicare and Medicaid. This contrived and fraudulent coding results in increased revenue for ISI from Medicare and Medicaid.

38.    ISI engaged in price-fixing/market manipulation by alternatively offering/threatening exclusive product sales/placements between hospitals in order to compel sales of ISI products and thereby ultimately and unlawfully reducing market competition in violation of the Sherman Act 15 U.S.C. §§ 1-7. Relator has direct knowledge of these fraudulent sales practices by ISI to limit the market share by price fixing/market manipulation; specifically between Tampa General Hospital and St. Joseph's Hospital as a system was leveraged through an agreement by ISI that they would not sell a system to the competing hospital for a period of at least six (6) months if they would purchase at that time. While this is one instance, this process is ultimately acknowledged as a standard sales practice on a national level within ISI.

39.    Relator has relevant documentation regarding **Intuitive Surgical, Inc.'s** fraudulent schemes in which ISI provided physicians with benefits and accoutrements, such as paid trips and marketing



materials, and orchestrated fraudulent billing by providing coding procedures which ultimately caused fraudulent Medicare and Medicaid billing. Further, Defendant's fraudulent promotional and marketing policies constituted improper compensation in exchange for the utilization of ISI's services, in violation of anti-kickback prohibitions. The scheme as a whole interferes with the doctor-patient relationship, as it creates a conflict of interest, potentially putting the patient's health at great risk and driving the prescription of surgical procedures by unlawful inducement rather than patient need and care.

40.    Relator, **Rose**, took immediate steps with his employer to address the serious issues raised by the actions of **Intuitive Surgical, Inc.** for providing unlawful inducements to physicians utilizing ISI services. Relator, **Rose**, also expressed his concern to his employer about the illicit activity of ISI directing physician coding and billing for surgical procedures that utilize **ISI** products. Relator, **Rose's** opposition/complaints to **Intuitive Surgical, Inc.** have gone unheeded, and have initiated a campaign of retaliation against Relator, **Rose**, which has resulted in Relator's termination of employment on August 15, 2012, or five (5) days after he filed his initial *qui tam* complaint.

## VI. CAUSES OF ACTION:

### COUNT I. FALSE CLAIMS ACT VIOLATION (31 U.S.C. § 3729(a)(1)(A)(B)(C))

41.    The allegations of the preceding paragraphs are re-alleged as if fully set forth herein.

42.    Defendant, **Intuitive Surgical, Inc.,** by and through its officers, agents and employees, knowingly presented or caused to be presented to an officer or employee of the United States Government, false or fraudulent claims for payment and approval.

43.    Defendant, **Intuitive Surgical, Inc.,** by and through its officers, agents and employees, knowingly made, used, or cause to be made or used, false records or statements, to get false or fraudulent claims paid or approved.

44.    Based upon the false claims described above, ISI directly or indirectly obtained payment from the United States Government for its services it provides to patients covered under Medicare and Medicaid.

45.    Defendant, ISI, by and through its officers, agents, and employees, knowingly made, used, or cause to be made or used, unlawful inducements to physicians.

46.    Additionally, Defendant's conduct of "monopoliz[ation], or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony" constitutes a clear-cut violation of the Sherman Antitrust Act (15 U.S.C. § 2).

47.    Further, ISI created such arrangements, which encourages overutilization of services, in turn driving up health care costs.   In addition, ISI creates a captive referral system, which limits competition by other providers clearly violating the Clayton Act (15 U.S.C.§ § 12-27) and the Stark Act (42 U.S.C. § 1395nn).

48.    Based upon the false claims described above, Defendant, ISI, has promoted and documented off-label or unapproved use of ISI surgical equipment.   Defendant, ISI, by and through its officers, agents and employees, has authorized the actions of its various officers, agents and employees to take actions set forth above.

49.    The United States Government has sustained damages because of the acts of the Defendant, ISI, as a result of the Defendants' violation of the False Claims Act (FCA),   31 U.S.C. § 3729(a)(1)(A)(B)(C).

50.    As set forth in the preceding paragraphs, Defendant, **Intuitive Surgical, Inc.,** has knowingly violated 31 U.S.C. § 3729(a)(1)(A)(B)(C) and 42 U.S.C. §1320a-7b(b) and has thereby damaged the United States Government by its action in an amount to be determined at trial.



## COUNT II, RETALIATION (31 U.S.C. § 3730(h))

51.     The allegations of the preceding paragraphs are re-alleged as if fully set forth herein.

52.     The False Claims Act anti-retaliation provisions protect employees against... "threats", "harassment", and any other ... "discrimination." 31 U.S.C. § 3730(h): To state a valid claim for retaliation under 31 U.S.C. § 3730(h), Plaintiff must show (1) that he engaged in "protected conduct," (2) that **ISI** was aware of his actions, and (3) that he suffered an adverse employment action in retaliation for that conduct.

53.     Defendant, by and through its employees, has harassed and constantly threatened Relator, **Rose,** verbally, written and through phone calls, as a result of his investigation of and opposition to their fraudulent conduct.  In violation of the False Claims Act § 3730(h), **ISI** took negative employment actions against Relator, including terminating him from employment on August 15, 2012, in response to his investigation and initiation/filing of his claim on August 10, 2012.

54.     As a result of **ISI's** conduct, Relator suffered negative employment consequences and has suffered damages, now and in the future.

## COUNT III, RETALIATION (Fla. Stat. §448.101 *et. al.*)

55.     The allegations of the preceding paragraphs are re-alleged as if fully set forth herein.

56.     In violation of the False Claims Act § 3730(h), **ISI** took the retaliation directed against Plaintiff, including terminating his employment on August 15, 2012, as a result of his protected conduct gives rise to liability under the Florida Whistleblower Statute, Fla. Stat. 448.101 *et. al.*

57.     The Florida Whistleblower Statute prohibits retaliation against an employee who openly opposes a violation of 'law, rule, or regulation' § 448.101(4), Fla. Stat. (2012).  Previously, Plaintiff, **Rose,** openly complained about/opposed the fraudulent scheme engaged in by **ISI** of misrepresenting to hospitals that they would gain on-staff physicians who were trained in the




daVinci® Surgical System, when this was clearly false, in order to fraudulently induce and refer work to **ISI** in violation of the Federal False Claim Act.

58.    Additionally, Defendant's conduct of using "unfair methods of competition, and unfair or deceptive acts or practices in the conduct of any trade or commerce" constitutes a clear-cut violation of the <u>Florida Deceptive Sales Trade Statute</u> § 501.204, Fla. Stat. (2011). It is clear that Defendant's fraudulent and unlawful sales practices as detailed within this Complaint constitute deceptive sales practice under Florida Statute, as well as the Federal False Claims Act. Plaintiff's opposition to this violation of the law constitutes protected activity under the Florida Whistleblower Act. Defendant's campaign of retaliation against him, as articulated in count two, clearly constitutes unlawful retaliation in violation of the act.

59.    In violation of the Florida Whistleblower Act, F.S. § 448.101(5), **ISI** took adverse employment actions against Plaintiff, including termination of his employment on August 15, 2012, in response to Plaintiff's opposition to Defendant's violation of Florida law, dealing with deceptive sales practices and the Federal False Claim Act.

60.    As a result of **ISI's** conduct, Plaintiff suffered negative employment consequences and has suffered damages, now and in the future, from Defendant in response to his investigation and initiation of this claim on August 10, 2012.

## VII. PRAYER OF RELIEF:

WHEREFORE, Relator, **Rose**, on behalf of himself and the United States Government prays:

a)    That this Court Order the Defendant, **Intuitive Surgical, Inc.,** cease and desist from violating 31 U.S.C. § 3729(a)(1)(A)(B)(C);

b)    That Relator be awarded all relief necessary to make him whole, including but not limited to, two times his back pay, interest on the back pay, and compensation for all special damages sustained, including attorneys' fees and costs.



c)    That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States Government has sustained because of this action, plus a civil penalty of $5,000 to $10,000 for each action in violation of  31 U.S.C. § 3729(a)(1)(A)(B)(C), and the costs of this action with interest, including the costs of the United States Government for its expenses related to this action;

d)    The Relator be awarded all costs incurred, including reasonable attorneys' fees;

e)    That in the event the United States Government continues to proceed with this action, Relator be awarded an amount for bringing this action in the amount of at least fifteen percent (15%) but not more than twenty-five percent (25%) of the proceeds of the action or settlement of the claim;

f)    That in the event the United States Government does not proceed with this action, Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be not less than twenty-five percent (25%), nor more than thirty percent (30%) of the proceeds of the action settlement;

g)    That a trial by jury be held on all issues;

h)    That the United States Government and Relator receive any other relief, both at law and at equity, to which they may reasonably appear entitled.

i.)    That this Court Order the Defendant, **Intuitive Surgical, Inc.,** cease and desist from violating the Florida Whistleblower's Act, F.S. 448.101 *et al.*

j.)    Relator be awarded compensation for lost wages, benefits, and other remuneration and any other compensatory damages allowable by law.

## VIII. STATES CAUSES OF ACTION:

**A.    Count IV – California False Claims Act (Cal. Gov't. Code § 12650 *et seq.*)**

61.    The allegations of the preceding paragraphs are re-alleged as if fully set forth herein.



62.    This is a *qui tam* action brought by Relator and the State of California to recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't Code § 12650 *et seq.*

63.    Cal. Gov't § 12651(a) provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to an officer or employee of the State or of any political division thereof, a false claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the State or by any political subdivision;

(c)    conspires to defraud the State or any political subdivision by getting a false claim allowed or paid by the State or by any political subdivision;

(d)    is a beneficiary of an inadvertent submission of a false claim to the State or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State or the political subdivision within a reasonable time after discovery of the false claim.

64.    In addition, the payment or receipt of bribes or kickbacks is prohibited under Cal. Bus. & Prof. Code §§ 650 and 650.1, and is also specifically prohibited in treatment of Medi-Cal patients pursuant to Cal. Welf. & Inst. Code § 14107.2.

65.    ISI violated Cal. Bus. & Prof. Code §§ 650-650.1 and Cal. Welf. & Inst. Code § 14107.2, the Federal Anti-Kickback Act, as described herein.

66.    Had the State of California known that ISI was violating the Federal and State unlawful inducement laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with ISI's fraudulent and illegal practices.

67.    As a result of ISI's violations of Cal. Bus. & Prof. Code §§ 650-650.1 and Cal. Welf. & Inst. Code § 14107.2, the State of California has been damaged. ·

68.    There are no bars to recovery under Cal. Bus. & Prof. Code §§ 650-650.1 and Cal. Welf. & Inst. Code § 14107.2, and, or in the alternative, Relator is an original source as defined therein.



Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Cal. Bus. & Prof. Code §§ 650-650.1 and Cal. Welf. & Inst. Code § 14107.2 on behalf of himself and the State of California.

69.    This Court is requested to accept pendent jurisdiction over this related State claim as it is predicated upon the same exact facts as the Federal claim, and merely asserts separate damages to the State of California.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against **Intuitive Surgical, Inc.**

To the **STATE OF CALIFORNIA:**

a.)    Three times the amount of actual damages that the State of California has sustained as a result of **ISI's** fraudulent and illegal practices;

b.)    A civil penalty of up to $10,000 for each false claim that **ISI** presented or caused to be presented to the State of California;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR:**

a.)    The maximum amount allowed pursuant to Cal. Bus. & Prof. Code §§ 650-650.1 and Cal. Welf. & Inst. Code § 14107.2 and/or any other applicable provision of the law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorneys' fees and costs; and

d.)    Such further relief as this Court deems equitable and just.

**B.     Count V – Florida False Claims Act (Fla. Stat. § 68.081 *et seq.*)**

70.     Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

71.     This is a *qui tam* action brought by Relator and the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*

72.     Fla. Stat. § 68.082(2) provides liability for any person who:

(a)     knowingly presents, or causes to be presented, to an officer or employee of an agency a false or fraudulent claim for payment or approval;

(b)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by an agency;

(c)     conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid.

73.     ISI violated Fla. Stat. § 409.920, the Florida Anti-Kickback Statute and the Federal Anti-Kickback Act, as described herein.

74.     Had the State of Florida known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with ISI's fraudulent and illegal practices.

75.     As a result of ISI's violations of Fla. Stat. § 409.920, the State of Florida has been damaged.

76.     There are no bars to recovery under Fla. Stat. § 409.920 and, or in the alternative, Relator is an original source as defined herein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Fla. Stat. § 68.083(2) on behalf of himself and the State of Florida.

 

77.     This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Florida.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against **Intuitive Surgical, Inc.**

To the **STATE OF FLORIDA:**

a.)     Three times the amount of actual damages that the State of Florida has sustained as a result of ISI's fraudulent and illegal practices;

b.)     A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that **ISI** caused to be presented to the State of Florida;

c.)     Prejudgment interest; and

d.)     All costs incurred in bringing this action.

To **RELATOR:**

a.)     The maximum amount allowed pursuant to Fla. Stat. § 68.085 and/or any other applicable provision of law;

b.)     Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)     An award of reasonable attorneys' fees and costs; and

d.)     Such further relief as this Court deems equitable and just.

**C.     Count VI - Massachusetts Claims Act (Mass. Gen. Laws Ann. 12 § SA *et seq.*)**

78.     Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.



79.    This is a *qui tam* action brought by Relator and the Commonwealth of Massachusetts for treble damages and penalties under Massachusetts False Claims Act, Mass. Gen. Laws Ann. 12 § 5A *et seq.*

80.    Mass. Gen. Laws Ann. 12 § 5B provides liability for any person who:

(a)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the Commonwealth or any political subdivision thereof;

(c)    conspires to defraud the Commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

(d)    is a beneficiary of an inadvertent submission of a false claim to the Commonwealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the Commonwealth or political subdivision within a reasonable time after discovery of the false claim.

81.    In addition, Mass. Gen. Laws Ann. 118E § 41 prohibits the solicitation, receipt or offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any good, service or item for which payment may be made in whole or in part under the Massachusetts Medicaid program.

82.    ISI violated Mass. Gen. Laws Ann. 12 § 5B and knowingly caused thousands of false claims to be made, used and presented to the Commonwealth of Massachusetts from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Massachusetts Anti-Kickback Statute (Mass. Gen. Laws Ann. 118£ §41), as described herein.



83.    The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid program and other State healthcare programs, and unaware of **ISI's** fraudulent and illegal practices, paid the claims submitted by healthcare providers and third party payers in connection therewith.

84.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the Commonwealth of Massachusetts in connection with **ISI's** fraudulent and illegal practices.

85.    Had the Commonwealth of Massachusetts known that **ISI** was violating the Federal and State laws cited herein, it would not have paid the claims submitted by healthcare providers and third party payers in connection with **ISI's** fraudulent and illegal practices.

86.    As a result of **ISI's** violations of Mass. Gen. Laws Ann. 12 § 5B, the Commonwealth of Massachusetts has been damaged.

87.    There are no bars to recovery under Mass. Gen. Laws Ann. 12 § 5G(3) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mass. Gen. Laws Ann. 12 § 5C(2) on behalf of himself and the Commonwealth of Massachusetts.

88.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the Commonwealth of Massachusetts in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against **ISI**.

To the **COMMONWEALTH OF MASSACHUSETTS:**

a.)     Three times the amount of actual damages that the Commonwealth of Massachusetts has sustained as a result of ISI's fraudulent and illegal practices;

b.)     A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that ISI caused to be presented to the Commonwealth of Massachusetts;

c.)     Prejudgment interest; and

d.)     All costs incurred in bringing this action.

To **RELATOR:**

a.)     The maximum amount allowed pursuant to Mass. Gen. Laws Ann.12, §5F and/or any other applicable provision of law;

b.)     Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)     An award of reasonable attorneys' fees and costs; and

d.)     Such further relief as this Court deems equitable and just.

**D.    Count VII - Tennessee Medicaid False Claims Act (Tenn. Code Ann. § 71-5-181 *et seq.*)**

89.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

90.    This is a *qui tam* action brought by Relator and the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*

91.    Tenn. Code Ann. § 71-5-182(a)(1) provides liability for any person who:

(a)     presents, or causes to be presented to the State, a claim for payment under the Medicaid program knowing such claim is false or fraudulent;

(b)    makes or uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the State knowing such record or statement is false; or

(c)    conspires to defraud the State by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent.

92.    ISI violated Tenn. Code Ann. § 71-5-182(a)(1) and knowingly caused thousands of false claims to be made, used and presented to the State of Tennessee from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Tennessee Anti-Kickback Statute (Tenn. Code Ann. § 71-5-182), as described herein.

93.    ISI's violations of § 71-5-182 and various other Federal and State laws caused false claims to be submitted for payment to the State of Tennessee.

94.    The State of Tennessee, by and through the Tennessee Medicaid program and other State healthcare programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by healthcare providers and third party payers in connection therewith.

95.    Compliance with applicable Medicare, Medicaid, and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Tennessee in connection with ISI's fraudulent and illegal practices.

96.    Had the State of Tennessee known that ISI violated the Federal and State laws cited herein, it would not have paid the claims submitted by healthcare providers and third party payers in connection with ISI's fraudulent and illegal practices.

97.    As a result of ISI's violations of Tenn. Code Ann. § 71-5-182(a)(l), the State of Tennessee has been damaged.

98.     There are no bars to recovery under Tenn. Code Ann. § 71-5-183(d)(2) and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Tenn. Code Ann. § 71-5-183(a)(1) on behalf of himself and the State of Tennessee.

99.     This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Tennessee in the operation of its Medicaid program.

        WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.

To the **STATE OF TENNESSEE:**

        a.)     Three times the amount of actual damages that the State of Tennessee has sustained as a result of **ISI's** fraudulent and illegal practices;

        b.)     A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that **ISI** caused to be presented to the State of Tennessee;

        c.)     Prejudgment interest; and

        d.)     All costs incurred in bringing this action.

To **RELATOR**:

        a.)     The maximum amount allowed pursuant to Tenn. Code Ann. § 71-5-183(d) and/or any other applicable provision of law;

        b.)     Reimbursement for reasonable expenses that Relator incurred in connection with this action;

        c.)     An award of reasonable attorneys' fees and costs; and

        d.)     Such further relief as this Court deems equitable and just.



**E.    Count VIII - Delaware False Claims and Reporting Act (6 Del. C. § 1201 *et seq.*)**

**100.**    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

**101.**    This is a *qui tam* action brought by Relator and the State of Delaware to recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, Title 6, Chapter 12 of the Delaware Code.

**102.**    6 Del. C. § 1201(a) provides liability for any person who:

(a)    knowingly presents, or causes to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved; or

(c)    conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

**103.**    In addition, 31 Del. C. § 1005 prohibits the solicitation or receipt of any remuneration (including kickbacks, bribes or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for the furnishing of any medical care or services for which payment may be made in whole or in part under any public assistance program.

**104.**    **ISI** violated 6 Del. C. § 1201(a) and knowingly caused thousands of false claims to be made, used and presented to the State of Delaware from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Delaware Anti-Kickback Statute (31 Del. C. § 1005), as described herein.

**105.**    The State of Delaware, by and through the Delaware Medicaid program and other State healthcare programs, and unaware of **ISI's** fraudulent and illegal practices, paid the claims submitted by healthcare providers and third party payers in connection therewith.



106.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Delaware in connection with **ISI's** fraudulent and illegal practices.

107.    Had the State of Delaware known that **ISI** was violating the Federal and State laws cited herein, it would not have paid the claims submitted by healthcare providers and third party payers in connection with **ISI's** fraudulent and illegal practices.

108.    As a result of **ISI's** violations of 6 Del. C. § 1201(a), the State of Delaware has been damaged.

109.    There are no bars to recovery under 6 Del. C. § 1206(c) and, or in the alternative, Relator is the original source as defined therein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 6 Del. C. § 1203(b) on behalf of himself and the State of Delaware.

110.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Delaware in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against **ISI**.

To the **STATE OF DELAWARE**:

a.)    Three times the amount of actual damages that the State of Delaware has sustained as a result of **ISI's** fraudulent and illegal practices;

b.)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that **ISI** caused to be presented to the State of Delaware;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.



To **RELATOR:**

a.)     The maximum amount allowed pursuant to 6 *Del.* C. § 1205, and/or any other applicable provision of law;

b.)     Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)     An award of reasonable attorneys' fees and costs; and

d.)     Such further relief as this Court deems equitable and just.

**F.      Count IX - Nevada False Claims Act (N.R.S. § 357.010 *et seq.*)**

111.     Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

112.     This is a *qui tam* action brought by Relator and the State of Nevada to recover treble damages and civil penalties under the Nevada False Claims Act, N.R.S. § 357.010 *et seq.*

113.     N.R.S. § 357.040(1) provides liability for any person who:

(a)     knowingly presents or causes to be presented a false claim for payment or approval;

(b)     knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim;

(c)     conspires to defraud by obtaining allowance or payment of a false claim;

(d)     is a beneficiary of an inadvertent submission of a false claim and, after

(e)     discovering the falsity of the claim, fails to disclose the falsity to the State or political subdivision within a reasonable time.

114.     In addition, N.R.S. § 422.560 prohibits the solicitation, acceptance or receipt of anything of value in connection with the provision of medical goods or services for which payment may be made in whole or in part under the Nevada Medicaid program.

115.    ISI violated N.R.S. § 357.040(1) and knowingly caused thousands of false claims to be made, used and presented to the State of Nevada from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Nevada Anti-Kickback Statute (N.R.S. § 422.560), as described herein.

116.    The State of Nevada, by and through the Nevada Medicaid program and other State healthcare programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by healthcare providers and third party payers in connection therewith.

117.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Nevada in connection with ISI's fraudulent and illegal practices.

118.    Had the State of Nevada known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by healthcare providers and third party payers in connection with ISI's fraudulent and illegal practices.

119.    As a result of ISI's violations of N.R.S. § 357.040(1), the State of Nevada has been damaged.

120.    There are no bars to recovery under N.R.S. § 357.100 and, or in the alternative, Relator is an original source as defined therein.    Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.R.S. § 357.080 on behalf of himself and the State of Nevada.

121.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Nevada in the operation of its Medicaid program.

       WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.



To the **STATE OF NEVADA:**

     a.)    Three times the amount of actual damages that the State of Nevada has sustained as a result of **ISI's** fraudulent and illegal practices;

     b.)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that **ISI** caused to be presented to the State of Nevada;

     c.)    Prejudgment interest; and

     d.)    All costs incurred in bringing this action.

To **RELATOR:**

     a.)    The maximum amount allowed pursuant to N.R.S. § 357.210 and/or any other applicable provision of law;

     b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

     c.)    An award of reasonable attorneys' fees and costs; and

     d.)    Such further relief as this Court deems equitable and just.

**G.**    **Count X - Louisiana Medical Assistance Programs Integrity Law (La. Rev. Stat. Ann. § 46:437.1 *et seq.*)**

**122.**    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

**123.**    This is a *qui tam* action brought by Relator and the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:437.1 *et seq.*

**124.**    La. Rev. Stat. Ann. § 46:438.3 provides:

     (a)    No person shall knowingly present or cause to be presented a false or fraudulent claim;

(b)     No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance program funds; and

(c)     No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

125.    In addition, La. Rev. Stat. Ann. § 46:438.2(A) prohibits the solicitation, receipt, offering or payment of any financial inducements, including kickbacks, bribes, rebates, etc., directly or indirectly, overtly or covertly, in cash or in kind, for furnishing health care goods or services paid for in whole or in part by the Louisiana Medical Assistance Program.

126.    ISI violated La. Rev. Stat. Ann. § 46:438.3 and knowingly caused thousands of false claims to be made, used and presented to the State of Louisiana from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Louisiana Anti-Kickback Statute (La. Rev. Stat. Ann. §46:438.2(A)), as described herein.

127.    The State of Louisiana, by and through the Louisiana Medicaid program and other State healthcare programs, and unaware of **ISI's** fraudulent and illegal practices, paid the claims submitted by healthcare providers and third party payers in connection therewith.

128.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Louisiana in connection with **ISI's** fraudulent and illegal practices.

129.    Had the State of Louisiana known that **ISI** was violating the Federal and State laws cited herein, it would not have paid the claims submitted by healthcare providers and third party payers in connection with **ISI's** fraudulent and illegal practices.

130.    As a result of **ISI's** violations of La. Rev. Stat. Ann. § 46:438.3, the State of Louisiana has been damaged.



**131.**    There are no bars to recovery under La. Rev. Stat. Ann. § 46:439.1(E) and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to La. Rev. Stat. Ann. § 46.439.1 (A) on behalf of himself and the State of Louisiana.

**132.**    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Louisiana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against **ISI**.

To the **STATE OF LOUISIANA:**

a.)    Three times the amount of actual damages that the State of Louisiana has sustained as a result of **ISI's** fraudulent and illegal practices;

b.)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that **ISI** caused to be presented to the State of Louisiana;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR**:

a.)    The maximum amount allowed pursuant to La. Rev. Stat. § 46:439.4(A) and/or any other applicable provision of law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorney's fees and costs; and

d.)    Such further relief as this Court deems equitable and just.



**H.    Count XI - Hawaii False Claims Act (Haw. Rev. Stat. § 661-21 *et seq.*)**

133.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

134.    This is a *qui tam* action brought by Relator and the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.*

135.    Haw. Rev. Stat. § 661-21(a) provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to an officer or employee of the State a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(c)    conspires to defraud the State by getting a false or fraudulent claim allowed or paid; or

(d)    is a beneficiary of an inadvertent submission of a false claim to the State, who subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State within a reasonable time after discovery of the false claim.

136.    ISI violated Haw. Rev. Stat. § 661-21(a) and knowingly caused thousands of false claims to be made, used and presented to the State of Hawaii from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Hawaii Anti-Kickback Statute (Haw. Rev. Stat. § 346-43.5), as described herein.

137.    The State of Hawaii, by and through the Hawaii Medicaid program and other State healthcare programs, and unaware of **ISI's** fraudulent and illegal practices, paid the claims submitted by healthcare providers and third party payers in connection therewith.

138.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Hawaii in connection with **ISI's** fraudulent and illegal practices.

139.    Had the State of Hawaii known that **ISI** was violating the Federal and State laws cited herein, it would not have paid the claims submitted by healthcare providers and third party payers in connection with **ISI's** fraudulent and illegal practices.

140.    As a result of **ISI's** violations of Haw. Rev. Stat. § 661-21(a), the State of Hawaii has been damaged.

141.    There are no bars to recovery under Haw. Rev. Stat. § 661-28 and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Haw. Rev. Stat. § 661-25(a) on behalf of himself and the State of Hawaii.

142.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Hawaii in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against **ISI**.

To the **STATE OF HAWAII**:

a.)    Three times the amount of actual damages that the State of Hawaii has sustained as a result of **ISI's** fraudulent and illegal practices;

b.)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that **ISI** caused to be presented to the State of Hawaii;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR:**

a.)    The maximum amount allowed pursuant to Haw. Rev. Stat. §661-27 and/or any other applicable provision of law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorneys' fees and costs; and

d.)    Such further relief as this Court deems equitable and just.

I.    **Count XII – District of Columbia Procurement Reform Amendment Act (D.C. Code § 2-308.13 *et seq.*)**

**143.**    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

**144.**    This is a *qui tam* action brought by Relator and the District of Columbia to recover treble damages and civil penalties under the District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.13 *et seq.* 191. D.C. Code § 2-308.14(a) provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to an officer or employee of the District a false claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the District;

(c)    conspires to defraud the District by getting a false claim allowed or paid by the District;

(d)    is the beneficiary of an inadvertent submission of a false claim to the District, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the District.

**145.**    ISI violated D.C. Code § 2-308.14(a) and knowingly caused thousands of false claims to be made, used and presented to the District of Columbia from at least 2011 to the present by its



violation of Federal and State laws, including the Federal Anti- Kickback Act and the District of Columbia Anti-Kickback Statute (D.C. Code § 4-802), as described herein.

146.    The District of Columbia, by and through the District of Columbia Medicaid program and other State healthcare programs, and unaware of ISI's fraudulent and illegal practices paid the claims submitted by healthcare providers and third party payers in connection therewith.

147.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the District of Columbia in connection with ISI's fraudulent and illegal practices.

148.    Had the District of Columbia known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by healthcare providers and third party payers in connection with ISI's fraudulent and illegal practices.

149.    As a result of ISI's violations of D.C. Code § 2-308.14(a), the District of Columbia has been damaged.

150.    There are no bars to recovery under D.C. Code § 2-308.15(c)(2) and, or in the alternative, Relator is an original source as defined therein.    Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to D.C. Code § 2-308.15(b) on behalf of himself and the District of Columbia.

151.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the District of Columbia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.

To the **DISTRICT OF COLUMBIA**:

 

a.)    Three times the amount of actual damages that the District of Columbia has sustained as a result of **ISI's** fraudulent and illegal practices;

b.)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that **ISI** caused to be presented to the District of Columbia;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR**:

a.)    The maximum amount allowed pursuant to D.C. Code § 2-308.15(f) and/or any other applicable provision of law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorneys' fees and costs; and

d.)    such further relief as this Court deems equitable and just.

**J.    Count XIII - Virginia Fraud Against Taxpayer Act (Va. Code Ann. § 8.01-216.1 *et seq.*)**

152.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

153.    This is a *qui tam* action brought by Relator and the Commonwealth of Virginia to recover treble damages and civil penalties under the Virginia Fraud Against Taxpayer Act, Va. Code Ann. § 8.01-216.1 *et seq.*

154.    Va. Code Ann. § 8.01-216.3 provides liability for any person who:

(a)    Knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth false or fraudulent claim for payment or approval;

(b)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(c)    Conspires to commit a violation of subdivision a, b, d, e, f, or g;

(d)    Has possession, custody, or control of property or money used, or to be used, by the Commonwealth and knowingly delivers, or causes to be delivered, less than all such money or property;

(e)    Is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(f)    Knowingly buys or receives as a pledge of an obligation or debt, public property from an officer or employee of the Commonwealth who lawfully may not sell or pledge the property; or

(g)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Commonwealth or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Commonwealth.

155.    ISI violated Va. Code Ann. § 8.01-216.3 and knowingly caused thousands of false claims to be made, used and presented to the Commonwealth of Virginia from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Virginia Anti-Kickback Statute (Va. Code Ann. § 32.1-315), as described herein.

156.    The Commonwealth of Virginia, by and through the Virginia Medicaid program and other State healthcare programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by healthcare providers and third party payers in connection therewith.

157.   Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the Commonwealth of Virginia in connection with ISI's fraudulent and illegal practices.

158.   Had the Commonwealth of Virginia known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with ISI's fraudulent and illegal practices.

159.   As a result of ISI's violations of Va. Code Ann. § 8.01-216.3, the Commonwealth of Virginia has been damaged.

160.   There are no bars to recovery under Va. Code Ann. § 8.01-216.8, and, or in the alternative, Relator is an original source as defined therein.   Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Va. Code Ann. § 8.01-216.5 on behalf of himself and the Commonwealth of Virginia.

161.   This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the Commonwealth of Virginia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.

To the **COMMONWEALTH OF VIRGINIA**:

a.)   Three times the amount of actual damages that the Commonwealth of Virginia has sustained as a result of ISI's fraudulent and illegal practices;

b.)   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that ISI caused to be presented to the Commonwealth of Virginia;

c.)   Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR**:

a.)    The maximum amount allowed pursuant to Va. Code Ann. § 8.01-216.7 and/or any other applicable provision of law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorneys' fees and costs; and

d.)    Such further relief as this Court deems equitable and just.

**K.    Count XIV - Georgia State False Medicaid Claims Act (Ga. Code. Ann. § 49-4-168 *et seq.*)**

162.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

163.    This is a *qui tam* action brought by Relator and the State of Georgia to recover treble damages and civil penalties under the Georgia State False Medicaid Claims Act, Ga. Code. Ann. § 49-4-168 *et seq.*

164.    Ga. Code. Ann. § 49-4-168.l(a) provides liability for any person who:

(a)    knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

(c)    conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid.

165.    ISI violated Ga. Code. Ann. § 49-4-168.1 and knowingly caused thousands of false claims to be made, used and presented to the State of Georgia from at least 2011 to the present by its violation of federal and state laws, including the Federal Anti-Kickback Act, as described herein.

166.    The State of Georgia, by and through the Georgia Medicaid program and other State healthcare programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by healthcare providers and third party payers in connection therewith.

167.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Georgia in connection with ISI's fraudulent and illegal practices.

168.    Had the State of Georgia known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by healthcare providers and third party payers in connection with ISI's fraudulent and illegal practices.

169.    As a result of ISI's violations of Ga. Code. Ann. § 49-4-168.1, the State of Georgia has been damaged.

170.    There are no bars to recovery under Ga. Code Ann. § 49-4-168.2(j)(2) and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Ga. Code Ann. § 4-4-168.2(b) on behalf of himself and the State of Georgia.

171.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Georgia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.

To the **STATE OF GEORGIA:**



a.) Three times the amount of actual damages that the State of Georgia has sustained as a result of **ISI's** fraudulent and illegal practices;

b.) A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that **ISI** caused to be presented to the State of Georgia;

c.) Prejudgment interest; and

d.) All costs incurred in bringing this action.

To **RELATOR:**

a.) The maximum amount allowed pursuant to Ga. Code. Ann. § 49-4-168.2(i)(2) and/or any other applicable provision of law;

b.) Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.) An award of reasonable attorneys' fees and costs; and

d.) Such further relief as this Court deems equitable and just.

**L.    Count XV - Indiana False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.5-1 et seq.)**

172. Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

173. This is a *qui tam* action brought by Relator and the State of Indiana to recover treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5-1 *et seq.*

174. Ind. Code § 5-11-5.5-2 provides liability for any person who:

i. knowingly or intentionally:

(a) presents a false claim to the State for payment or approval;

(b)     makes or uses a false record or statement to obtain payment or approval of a false claim from the State;

(c)     with intent to defraud the State, delivers less money or property to the State than the amount recorded on the certificate or receipt the person receives from the State;

(d)     with intent to defraud the State, authorizes issuance of a receipt without knowing that the information on the receipt is true;

(e)     receives public property as a pledge of an obligation on a debt from an employee who is not lawfully authorized to sell or pledge the property;

(f)     makes or uses a false record or statement to avoid an obligation to payer transmit property to the State;

(g)     causes or induces another person to perform an act described in subdivisions a through f.

175.    ISI violated Ind. Code § 5-11-5.5-2 and knowingly caused thousands of false claims to be made, used and presented to the State of Indiana from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Indiana Anti-Kickback Statute (Ind. Code § 12-15-24-2), as described herein.

176.    The State of Indiana, by and through the Indiana Medicaid program and other State healthcare programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by healthcare providers and third party payers in connection therewith.

177.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Indiana in connection with ISI's fraudulent and illegal practices.



178.    Had the State of Indiana known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by healthcare providers and third party payers in connection with ISI's fraudulent and illegal practices.

179.    As a result of ISI's violations of Ind. Code § 5-11-5.5-2, the State of Indiana has been damaged.

180.    There are no bars to recovery under Ind. Code § 5-11-5.5-7(f) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Ind. Code § 5-11-5.5-4 on behalf of himself and the State of Indiana.

181.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Indiana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.

To the **STATE OF INDIANA:**

a.)    Three times the amount of actual damages that the State of Indiana has sustained as a result of **ISI's** fraudulent and illegal practices;

b.)    A civil penalty of not less than $5,000 for each false claim that **ISI** caused to be presented to the State of Indiana;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR:**

a.)    The maximum amount allowed pursuant to Ind. Code § 5-11-5.5-6 and/or any other applicable provision of law;

b.)     Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)     An award of reasonable attorneys' fees and costs; and

d.)     Such further relief as this Court deems equitable and just.

## M.    Count XVI - Michigan Medicaid False Claims Act (Mich. Compo Laws § 400.601 *et seq.*)

182.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

183.    This is a *qui tam* action brought by Relator and the State of Michigan to recover treble damages and civil penalties under the Michigan Medicaid False Claims Act, Mich. Compo Laws § 400.601 *et seq.*

184.    Mich. Compo Laws §§ 400.603 to 400.607 provides liability for a person who:

(a)    knowingly makes or causes to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit;

(b)    knowingly makes or presents or causes to be made or presented to an employee or officer of this State claim under Medicaid;

(c)    conspires to defraud the Commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim.

185.    ISI violated Mich. Compo Laws §§ 400.603 to 400.607 and knowingly caused thousands of false claims to be made, used and presented to the State of Michigan from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Michigan Anti-Kickback Statute (Mich. Compo Laws § 400.604), as described herein.



186.    The State of Michigan, by and through the Michigan Medicaid program and other State health care programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

187.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Michigan in connection with ISI's fraudulent and illegal practices.

188.    Had the State of Michigan known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with ISI's fraudulent and illegal practices.

189.    As a result of ISI's violations of Mich. Compo Laws §§ 400.603 to 400.607 the State of Michigan has been damaged.

190.    There are no bars to recovery under Mich. Compo Laws § 400.610(13) and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mich. Compo Laws § 400.610a on behalf of himself and the State of Michigan.

191.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Michigan in the operation of its Medicaid program.

    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.

To the **STATE OF MICHIGAN:**

    a.)    Three times the amount of actual damages that the State of Michigan has sustained as a result of ISI's fraudulent and illegal practices;

b.)    A civil penalty equal to the full amount received for each false claim that **ISI** caused to be presented to the State of Michigan;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR:**

a.)    The maximum amount allowed pursuant to Mich. Comp. Laws § 400.610a and/or any other applicable provision of law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorneys' fees and costs; and

d.)    Such further relief as this Court deems equitable and just.

**N.    Count XVII - Montana False Claims Act (Mont. Code Ann. § 17-8-401 *et seq.*)**

192.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

193.    This is a *qui tam* action brought by Relator and the State of Montana to recover treble damages and civil penalties under the Montana False Claims Act, Mont. Code Ann. § 17- 8-401 *et seq.*

194.    Mont. Code Ann. § 17-8-403 provides liability for any person causing damages in excess of $500 to a governmental entity for any of the following acts:

(a)    knowingly presenting or causing to be presented to an officer or employee of the governmental entity a false claim for payment or approval;

(b)    knowingly making, using, or causing to be made or used a false record or statement to get a false claim paid or approved by the governmental entity;



(c)    conspiring to defraud the governmental entity by getting a false claim allowed or paid by the governmental entity.

195.    **ISI** violated Mont. Code Ann. § 17-8-403 and knowingly caused thousands of false claims to be made, used and presented to the State of Montana from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Montana Anti-Kickback Statute (Mont. Code Ann § 45-6-313), as described herein.

196.    The State of Montana, by and through the Montana Medicaid program and other State health care programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

197.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Montana in connection with ISI's fraudulent and illegal practices.

198.    Had the State of Montana known that **ISI** was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with ISI's fraudulent and illegal practices.

199.    As a result of ISI's violations of Mont. Code Ann. § 17-8-403, the State of Montana has been damaged.

200.    There are no bars to recovery under Mont. Code Ann. § 17-8-403(5)(c) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mont. Code Ann. § 17-8-406 on behalf of himself and the State of Montana.

201.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Montana in the operation of its Medicaid program.




WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against **ISI**.

To the **STATE OF MONTANA:**

a.)    Three times the amount of actual damages that the State of Montana sustained as a result of **ISI's** fraudulent and illegal practices;

b.)    A civil penalty pursuant Mont. Code Ann. § 17-8-410 to for each false claim that **ISI** caused to be presented to the State of Montana;

c.)    Prejudgment interest

d.)    All costs incurred in bringing this action.

To **RELATOR:**

a.)    The maximum amount allowed pursuant to Mont. Code Ann. § 17-8-410 and/or any other applicable provision of law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorneys' fees and costs; and

d.)    Such further relief as this Court deems equitable and just.

**O.    Count XVIII - New Jersey False Claims Act (N.J. Stat. Ann. §§ 2A:32-C1-2A:32-C18)**

202.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

203.    This is a *qui tam* action brought by Relator and the State of New Jersey to recover treble damages and civil penalties under the New Jersey False Claims Act, N.J. Stat. Ann. §§ 2A:32-C 1-2A:32-C 18.

204.    N.J. Stat. Ann. § 2A:32C-3 provides liability for any person who:

(a)    knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;

(c)    conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State.

205.    ISI violated N.J. Stat. Ann. § 2A:32C-3 and knowingly caused thousands of false claims to be made, used and presented to the State of New Jersey from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act, as described herein.

206.    The State of New Jersey, by and through the New Jersey Medicaid program and other State health care programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

207.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of New Jersey in connection with ISI's fraudulent and illegal practices.

208.    Had the State of New Jersey known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with ISI's fraudulent and illegal practices.

209.    As a result of ISI's violations of N.J. Stat. Ann. § 2A:32C-3, the State of New Jersey has been damaged.

210.    There are no bars to recovery under N.J. Stat. Ann. § 2A:32C-9(c), and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with direct and



independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.J. Stat. Ann. § 2A:32C-5(b) on behalf of himself and the State of New Jersey.

211.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of New Jersey in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against **ISI**.

To the **STATE OF NEW JERSEY**:

    a.)    Three times the amount of actual damages that the State of New Jersey has sustained as a result of **ISI's** fraudulent and illegal practices;

    b.)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that **ISI** caused to be presented to the State of New Jersey;

    c.)    Prejudgment interest; and

    d.)    All costs incurred in bringing this action.

To **RELATOR**:

    a.)    The maximum amount allowed pursuant to N.J. Stat. Ann. § 2A:32C-37 and/or any other applicable provision of law;

    b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    c.)    An award of reasonable attorneys' fees and costs; and

    d.)    Such further relief as this Court deems equitable and just.



### P.    Count XIX - New Mexico Medicaid False Claims Act (N.M. Stat. Ann. § 27-14-1 *et seq.*)

212.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

213.    This is a *qui tam* action brought by Relator and the State of New Mexico to recover treble damages and civil penalties under the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.* 271. N.M. Stat. Ann. § 27-14-4 provides liability for any person who:

(a)    presents, or causes to be presented, to the State a claim for payment under the Medicaid program knowing that such claim is false or fraudulent;

(b)    presents, or causes to be presented, to the State a claim for payment under the Medicaid program knowing that the person receiving a Medicaid benefit or payment is not authorized or is not eligible for a benefit under the Medicaid program;

(c)    makes, uses or causes to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the State knowing such record or statement is false;

(d)    conspires to defraud the State by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent.

214.    ISI violated N.M. Stat. Ann. § 27-14-4 and knowingly caused thousands of false claims to be made, used and presented to the State of New Mexico from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the New Mexico Anti-Kickback Statute (N.M. Stat Ann. § 30-44-7), as described herein.

215.    The State of New Mexico, by and through the New Mexico Medicaid program and other State health care programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.



216.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of New Mexico in connection with ISI's fraudulent and illegal practices.

217.    Had the State of New Mexico known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with ISI's fraudulent and illegal practices.

218.    As a result of ISI's violations of N.M. Stat. Ann. § 27-14-4, the State of New Mexico has been damaged.

219.    There are no bars to recovery under N.M. Stat. Ann. § 27-14-10(C), and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.M. Stat. Ann. § 27-14-7(B) on behalf of himself and the State of New Mexico.

220.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of New Mexico in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.

To the **STATE OF NEW MEXICO**:

a.)    Three times the amount of actual damages that the State of New Mexico has sustained as a result of ISI's fraudulent and illegal practices;

b.)    A civil penalty for each false claim that ISI caused to be presented to the State of New Mexico;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR**:

a.)    The maximum amount allowed pursuant to N.M. Stat. Ann. § 27-14-9 and/or any other applicable provision of law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorneys' fees and costs; and

d.)    Such further relief as this Court deems equitable and just.

**Q.    Count XX – New York False Claims Act (N.Y. State Fin. Law § 187 *et seq.*)**

221.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

222.    This is a *qui tam* action brought by Relator and the State of New York to recover treble damages and civil penalties under the New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*

223.    N.Y. State Fin. Law § 189 provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to any employee, officer or agent of the State or a local government, a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State or a local government;

(c)    conspires to defraud the State or a local government by getting a false or fraudulent claim allowed or paid.

224.    ISI violated N.Y. State Fin. Law § 189 and knowingly caused thousands of false claims to be made, used and presented to the State of New York from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act, as described herein.

225.    The State of New York, by and through the New York Medicaid program and other State health care programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

226.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of New York in connection with ISI's fraudulent and illegal practices.

227.    Had the State of New York known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with ISI's fraudulent and illegal practices.

228.    As a result of ISI's violations of N.Y. State Fin. Law § 189, the State of New York has been damaged.

229.    There are no bars to recovery under N.Y. Fin. Law § 190(9) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.Y. State Fin. Law § 190(2) on behalf of himself and the State of New York.

230.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of New York in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.

To the **STATE OF NEW YORK**:

a.)    Three times the amount of actual damages that the State of New York has sustained as a result of ISI's fraudulent and illegal practices;

b.)    A civil penalty of not less than $6,000 and not more than $12,000 for each false claim that **ISI** caused to be presented to the State of New York;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR**:

a.)    The maximum amount allowed pursuant to N.Y. State Fin. Law § 190(6) and/or any other applicable provision of law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorneys' fees and costs; and

d.)    Such further relief as this Court deems equitable and just.

**R.    Count XXI - Oklahoma Medicaid False Claims Act (Okla. Stat. Ann. § 5053.1 *et seq.*)**

231.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

232.    This is a *qui tam* action brought by Relator and the State of Oklahoma to recover treble damages and civil penalties under 63 Okla. Stat. Ann. § 5053.1 *et seq.*

233.    63 Okla. Stat. Ann. § 5053.1(B) provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(c)    conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

234.    **ISI** violated 63 Okla. Stat. Ann. § 5053.1(B) and knowingly caused thousands of false claims to be made, used and presented to the State of Oklahoma from at least 2011 to the present by its

violation of Federal and State laws, including the Federal Anti-Kickback Act and the Oklahoma Anti-Kickback Statute (56 Okla. Stat. Ann. § 1005), as described herein.

235.    The State of Oklahoma, by and through the Oklahoma Medicaid program and other State health care programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

236.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Oklahoma in connection with ISI's fraudulent and illegal practices.

237.    Had the State of Oklahoma known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with ISI's fraudulent and illegal practices.

238.    As a result of ISI's violations of 63 Okla. Stat. Ann. § 5053.1(B), the State of Oklahoma has been damaged.

239.    There are no bars to recovery under 63 Okla. Stat. Ann. § 5053.5 and, or in the alternative, Relator is an original source as defined therein.    Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 63 Okla. Stat. Ann. § 5053.2 on behalf of himself and the State of Oklahoma.

240.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Oklahoma in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.

To the **STATE OF OKLAHOMA:**



    a.)      Three times the amount of actual damages that the State of Oklahoma has sustained as a result of **ISI's** fraudulent and illegal practices;

    b.)      A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that **ISI** caused to be presented to the State of Oklahoma;

    c.)      Prejudgment interest; and

    d.)      All costs incurred in bringing this action.

To **RELATOR:**

    a.)      The maximum amount allowed pursuant to 62 Okla. Stat. Ann. § 5053.4 and/or any other applicable provision of law;

    b.)      Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    c.)      An award of reasonable attorneys' fees and costs; and

    d.)      Such further relief as this Court deems equitable and just.

**S.**     **Count XXII - Rhode Island State False Claims Act (R.1. Gen. Laws § 9-1.1-1 *et seq.*)**

**241.**    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

**242.**    This is a *qui tam* action brought by Relator and the State of Rhode Island to recover treble damages and civil penalties under the Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.*

**243.**    R.I. Gen. Laws § 9-1.1-3 provides liability for any person who:

    (a)      knowingly presents, or causes to be presented, to an officer or employee of the State or a member of the guard a false or fraudulent claim for payment or approval;

    (b)      knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(c)     conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

244.    ISI violated R.I. Gen. Laws § 9-1.1-3 and knowingly caused thousands of false claims to be made, used and presented to the State of Rhode Island from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Rhode Island Anti-Kickback Statutes (R.I. Gen Laws 5-48.1-3 and 40-8.2-803), as described herein.

245.    The State of Rhode Island, by and through the Rhode Island Medicaid program and other State health care programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

246.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Rhode Island in connection with ISI's fraudulent and illegal practices.

247.    Had the State of Rhode Island known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with ISI's fraudulent and illegal practices.

248.    As a result of ISI's violations of R.I. Gen. Laws § 9-1.1-3, the State of Rhode Island has been damaged.

249.    There are no bars to recovery under R.I. Gen. Laws § 9-1.1-4(e)(3), and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to R.I. § 9-1.1-4(b) on behalf of himself and the State of Rhode Island.

250.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Rhode Island in the operation of its Medicaid program.




WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.

To the **STATE OF RHODE ISLAND:**

a.)    Three times the amount of actual damages that the State of Rhode Island has sustained as a result of **ISI's** fraudulent and illegal practices;

b.)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that ISI caused to be presented to the State of Rhode Island;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR:**

a.)    The maximum amount allowed pursuant to R.I. Gen. Laws § 9-1.1-4(d) and/or any other applicable provision of law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorneys' fees and costs; and

d.)    Such further relief as this Court deems equitable and just.

**T.    Count XXIII - Texas False Claims Act (V.T.C.A. Hum. Res. Code § 36.001 *et seq.*)**

251.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

252.    This is a *qui tam* action brought by Relator and the State of Texas to recover double damages and civil penalties under Texas False Claims Act, V.T.C.A. Hum. Res. Code § 36.001 *et seq.*

253.    V.T.C.A. Hum. Res. Code § 36.002 provides liability for any person who:

(a)     knowingly makes causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid Program that is not authorized or that is greater than the benefit or payment that is authorized;

(b)     knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning ... information required to be provided by a Federal or State law, rule, regulation, or provider agreement pertaining to the Medicaid program;

(c)     knowingly enters into an agreement, combination, or conspiracy to defraud the State by obtaining or aiding another person in obtaining an unauthorized payment or benefit from the Medicaid program or a fiscal agent;

(d)     knowingly makes, uses, or causes the making or use of a false record or statement to conceal, avoid, or decrease an obligation to payer transmit money or property to this State under the Medicaid program; or

(e)     knowingly engages in conduct that constitutes a violation under V.T.C.A. Hum. Res. Code § 32.039 (the Texas Anti-Kickback Statute).

254.    **ISI** violated V.T.C.A. Hum. Res. Code § 36.002 and knowingly caused thousands of false claims to be made, used and presented to the State of Texas from at least 2011 to the present by its violation of Federal and State laws, including the Federal Anti-Kickback Act and the Texas Anti-Kickback Statute (V.T.CA Hum. Res. Code § 32.039), as described herein.

255.    The State of Texas, by and through the Texas Medicaid program and other State health care programs, and unaware of **ISI's** fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.




256.    Compliance with applicable Medicare, Medicaid and the various other Federal and State laws cited herein was an implied and an express condition of payment of claims submitted to the State of Texas in connection with **ISI's** fraudulent and illegal practices.

257.    Had the State of Texas known that **ISI** was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with **ISI's** fraudulent and illegal practices.

258.    As a result of **ISI's** violations of V.T.C.A. Hum. Res. Code § 36.002, the State of Texas has been damaged.

259.    There are no bars to recovery under V.T.C.A. Hum. Res. Code § 36.113(b), and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to V.T.C.A. Hum. Res. Code § 36.101 on behalf of himself and the State of Texas.

260.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against **ISI**.

To the **STATE OF TEXAS**:

a.)    The amount of actual damages that the State of Texas has sustained as a result of **ISI's** fraudulent and illegal practices;

b.)    Three times the amount of actual damages that the State of Texas has sustained as a result of **ISI's** fraudulent and illegal practices;

c.)    A civil penalty of not less than $5,000 as described in V.T.C.A. Hum. Res. Code Section 36.052(a)(3) for each false claim that **ISI** caused to be presented to the state of Texas;



      d.)      Prejudgment interest; and

      e.)      All costs incurred in bringing this action.

To **RELATOR**:

      a.)      The maximum amount allowed pursuant to V.T.C.A. Hum. Res. Code Section 36.110, and/or any other applicable provision of law;

      b.)      Reimbursement for reasonable expenses that Relator incurred in connection with this action; and

**U.**      **Count XXIV - Wisconsin False Claims Act (Wis. Stat. Ann. § 20.931 *et seq.*)**

**261.**      Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

**262.**      This is a *qui tam* action brought by Relator and the State of Wisconsin to recover treble damages and civil penalties under the Wisconsin False Claims Act, Wis. Stat. Ann. § 20.931 *et seq.*

**263.**      Wis. Stat. Ann. § 20.931 (2) provides liability for any person who:

      (a)      knowingly presents, or causes to be presented, to an officer or employee of the State a false or fraudulent claim for payment or approval;

      (b)      knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

      (c)      conspires to defraud the State by getting a false or fraudulent claim allowed or paid;

      (d)      knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to payer transmit money or property to the governmental entity or its contractors.

**264.**      **ISI** violated Wis. Stat. Ann. § 20.931 (2) and knowingly caused thousands of false claims to be made, used and presented to the State of Wisconsin from at least 2011 to the present by its violations of Federal and State laws as described herein.

265.  The State of Wisconsin, by and through the State of Wisconsin Medicaid program and other State health care programs, and unaware of **ISI's** fraudulent and illegal practices, paid the claims submitted by third party payers in connection therewith.

266.  Compliance with the applicable Medicare, Medicaid and various other Federal and State laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Wisconsin in connection with **ISI's** fraudulent and illegal practices.

267.  Had the State of Wisconsin known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with **ISI's** fraudulent and illegal practices.

268.  As a result of **ISI's** violations of Wis. Stat. Ann. § 20.931(2), the State of Wisconsin has been damaged.

269.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Wis. Stat. Ann. §20.931 on behalf of himself and the State of Wisconsin.

270.  This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Wisconsin in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against **ISI**.

To the **STATE OF WISCONSIN**:

a.)  Three times the amount of actual damages that the State of Wisconsin has sustained as a result of **ISI's** fraudulent and illegal practices;

b.)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that **ISI** caused to be presented to the State of Wisconsin;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR**:

a.)    The maximum amount allowed pursuant to Wis. Stat. Ann. § 20.931 (11) and/or any other applicable provision of law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorneys' fees and costs; and

d.)    Such further relief as this Court deems equitable and just.

**V.    Count XXV - Illinois Whistleblower Reward and Protection Act (740 ILCS *et seq.*)**

271.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

272.    This is a *qui tam* action brought by Relator and the State of Illinois to recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 *et seq.* 331. 740 ILCS 175/3(a) provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to an officer or employee of the State of a member of the Guard a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(c)    conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

273.    In addition, 305 ILCS 5/8A-3(b) of the Illinois Public Aid Code (Vendor Fraud and Kickbacks) prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or

 

rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Illinois Medicaid program.

274.    ISI violated 740 ILCS 175/3(a) and knowingly caused thousands of false claims to be made, used and presented to the State of Illinois from at least 2011 to the present by its violation of Federal and State laws, including the Illinois Anti-Kickback Statute 305 ILCS 5/8A-3(b) and the Federal Anti-Kickback Act, as described herein.

275.    The State of Illinois, by and through the Illinois Medicaid program and other State health care programs, and unaware of ISI's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

276.    Compliance with applicable Medicare, Medicaid and various other Federal and State laws was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Illinois in connection with ISI's fraudulent and illegal practices.

277.    Had the State of Illinois known that ISI was violating the Federal and State laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with ISI's fraudulent and illegal practices.

278.    As a result of ISI's violations of 740 ILCS 175/3(a), the State of Illinois has been damaged.

279.    There are no bars to recovery under 740 ILCS 175/4(e)(4), and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 740 ILCS 175/4(b) on behalf of himself and the State of Illinois.

280.    This Court is requested to accept pendent jurisdiction of this related State claim as it is predicated upon the exact same facts as the Federal claim, and merely asserts separate damage to the State of Illinois in the operation of its Medicaid program.

 

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against ISI.

To the **STATE OF ILLINOIS:**

a.)    Three times the amount of actual damages that the State of Illinois has sustained as a result of **ISI's** fraudulent and illegal practices;

b.)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that **ISI** caused to be presented to the State of Illinois;

c.)    Prejudgment interest; and

d.)    All costs incurred in bringing this action.

To **RELATOR:**

a.)    The maximum amount allowed pursuant to 740 ILCS 175/4(d) and/or any other applicable provision of law;

b.)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

c.)    An award of reasonable attorney's fees and costs; and

d.)    Such further relief as this Court deems equitable and just.

**W.    Count XXVI - Common Fund Relief**

281.    Relator repeats and re-alleges each allegation contained in the preceding paragraphs above as if fully set forth herein.

282.    While the states possessing *qui tam* statutes have a regulatory scheme for rewarding the Relator for coming forward, those which have none will potentially receive a windfall with little or no investigation or commitment of time or resources to the recovery. The Common Fund doctrine preserves the right of the litigant or counsel to an award from the Common Fund generated. The

United States Supreme Court, and many others, have addressed this situation. *Boeing Company* v. *Van Gernert,* 444 U.S. 472 478 (1980):

> Since the decisions in *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1882), and *Central Railroad & Banking Co.* v. *Pettuss,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. [citations omitted]. The common-fund doctrine reflects the traditional practice in courts of equity, *Trustees v. Greenough,* supra 105 U.S., at 532-537, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees [citations omitted]. The doctrine rests upon the perception that persons who obtain the benefit of the lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense [citation omitted]. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionally among those benefited by this suit. [citations omitted].

*Accord, In re Smithkline Beckman C01p. Securities Litig.,* 751 F. Supp. 525, 531 (E.D. Pa. 1990). There are a huge string of cases which recognize the Common Fund doctrine for situations like that in this case. *See* "The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation," 31 Ind. L. Rev. 313, 337-38 (1998). Relator respectfully requests this Court to award them a percentage share from the Common Fund generated by their actions.



## IX. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Relator demands a trial by jury.

WHEREFORE, Relator respectfully requests all relief described herein.

Dated: November 27, 2012

Respectfully submitted,

By:

**DAVID J. LINESCH, ESQ.**
Florida Bar No. 0376078
*The Linesch Firm, P.A.*
700 Bee Pond Road
Palm Harbor, FL 34683
Voice: (727) 786-0000
Facsimile: (727) 786-0974
Email: laborlaw@lineschfirm.com
Attorney for Plaintiff/Relator